## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NATHANIEL RILEY,

      **Plaintiff**

      **v.**

CO3 KUZAR, *et al.,*

      **Defendants**

: 
: 
: 
:   **CIVIL ACTION NO. 3:CV-17-0516**
: 
:   **(Judge Caputo)**
: 
: 
: 

## MEMORANDUM

### I.    Introduction

Mr. Riley's Complaint (ECF No. 1) is before the Court for preliminary screening pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B). The Complaint will be dismissed for failure to state a claim upon which relief may be granted. However, Mr. Riley will be granted the opportunity to file an amended complaint.

### II.    Standard of Review

When a litigant seeks to proceed *in forma pauperis*, without the prepayment of fees, 28 U.S.C. § 1915 requires the court to screen the complaint. Likewise, when a prisoner seeks redress from a government defendant in a civil action, whether proceeding *in forma pauperis* or not, the court must screen the complaint. *See* 28 U.S.C. § 1915A. Both 28 U.S.C. § 1915(e)(2)(B) and § 1915(A) give the court the authority to dismiss a complaint if it is frivolous, malicious, fails to state a

claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 11915(e)(2)(B)(i) – (iii); 28 U.S.C. § 1915A(b)(1) – (2).

A complaint is frivolous if it lacks an arguable basis either in fact or law. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 – 28, 109 S.Ct. 1827, 1832 – 33, 104 L.Ed.2d 338 (1989)). In deciding whether the complaint fails to state a claim on which relief may be granted, the court employs the standard used to analyze motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224 231 (3d Cir. 2008)). The court may also rely on exhibits attached to the complaint and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

Pursuant to Fed. R. Civ. P. 8(a), a complaint need only "include a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." "[T]he factual allegations of a complaint 'must be enough to raise a right to Relief above the speculative level' and the complaining party must offer 'more than labels and conclusions' or 'formulaic recitation of the elements of a cause of action.'"

*W. Run Student Hous. Assocs., LLC. v. Huntingdon Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). Legal conclusions are "not entitled to the assumption of truth." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

Finally, *pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys and are to be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Philips*, 515 F.3d at 245-46 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

## III.     Allegations in the Complaint

Nathaniel Riley is a state inmate currently housed at SCI-Coal Township. The allegations of his Complaint relate to his confinement at SCI-Camp Hill's Special Management Unit (SMU). (ECF No. 1, Compl.) Named as Defendants are the following Pennsylvania Department of Corrections (DOC) staff, employed at SCI-Camp Hill:  CO Kuzar; Corrections Officer (CO) John Doe; Unit Manager (UM)

Jennifer Digby; CO Alianiello; CO A.S. Huber; and Superintendent Laurel Harry. All Defendants are sued in their individual and official capacities.

### A. SMU Strip Search Policy

At all times relevant to this Complaint, Mr. Riley, an orthodox "Sunniyy Muslim", was housed in SCI-Camp Hill's SMU, a level 5 housing unit. Mr. Riley was subject to a strip search prior to using the shower, mini-law library, and an exercise unit. He was strip searched again upon his return from any of these areas/activities. The strip searches were conducted pursuant to DOC policy 6.5.1, the Administration of Security Level 5 Housing Units.

Defendants Kuzar and Digby, supervisors in the SMU, directed the enforcement of the strip search policy and threatened denial of access to showers, the mini-law library and exercise for those who were non-compliant to the strip search policy. Strip searches were conducted in open shower areas and cells. Strip searches were conducted without any particularized justification for the search. Mr. Riley asserts strip searches were conducted "as part of the punishment, to discourage inmates from utilizing the shower, mini-law library, and exercise". (*Id.*, p. 2.)

During a strip search Mr. Riley was required to remove his jumpsuit, undergarments, and socks. He was required to spread his buttocks, lift his penis and scrotum, and remain in this manner until staff completed their visual search. Mr. Riley argues that "Islaam prohibits men from uncovering one's unlawful nakedness

- 4 -

in front of those who are prohibited to look at it, other than their wives." (*Id.*, p. 3.) Mr. Riley filed grievance 605300 on December 30, 2015 challenging the SMU strip search policy claiming it unreasonable and that it placed a "substantial burden on his religious practices". (*Id.*, p. 7.) As relief, he "requested that he not be compelled to remove his boxer undershorts exposing his nakedness" for religious reasons. (*Id.*)

## B. Access-to-Courts Claim

On October 13, 2015 when Mr. Riley was admitted to SCI-Camp Hill's SMU, his personal and legal property was confiscated. The same day Mr. Riley notified UM Digby of his need to access his legal materials to file an appeal in one of his legal cases, *Riley v. Grainey*, No. 11-cv-0274.[1] UM Digby advised Plaintiff that Defendants Alianiello and Huber had to inventory his property. Superintendent Harry "is responsible for the day-to-day operations" of the institution and "exercised supervisory authority over all the DOC officials and staff within the institution, including Defendant Alianiello, Huber and Digby." (ECF No. 1, p. 4.) Mr. Riley notified Superintendent Harry of his need to access his legal materials. (Id., p. 12.) Defendant Harry failed to ensure Defendants Alianiello, Huber and Digby provided him access to his legal materials. (*Id.*, p. 4.) Consequently "Plaintiff's legal status was harmed, as Plaintiff was unable to file a notice of appeal" in *Riley v. Grainey*, *supra*.

---

[1] Although the Court could not locate a case entitled *Riley v. Grainey* with the docket number identified by Plaintiff, the Court takes judicial notice of the docket in *Riley v. Grainey*, No. 3:12-cv-2470 (M.D. Pa.). On September 24, 2015, the Court granted the Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Riley v. Grainey*, No. 3:12-cv-2470, 2015 WL 5693805 (M.D. Pa. Sept. 24, 2015).

On November 1, 2015, Mr. Riley field grievance 595910 concerning the lack of timely access to his legal materials. (*Id.*, p. 13.) His initial grievance was denied. (*Id.*, p. 14.) Both Defendants Alianiello and Huber denied receiving a written request from Mr. Riley seeking access to his property. UM Digby denied Plaintiff raised the issue of his property when they spoke on October 14, 2015 following his admission to the SMU/E Block. "An initial inventory of [Plaintiff's] property began the week of 10-26-2015, and [he] was placed in cell E-D-2-14 with all of [his] written materials. Due to the large quantity of belongings 1 footlocker, 4 boxes, 1 bag and a typewriter this process took until 11-2-2015 to be completed." (*Id.*)

Mr. Riley contends the SMU's strip search policy violated his Fourth and Eighth Amendment rights as well as violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000 *et seq.* He raises a First Amendment access-to-courts claim related to his lost appeal rights in *Riley v. Grainey*, No. 3:12-cv-2470 (M.D. Pa.)

## IV. Discussion

### A. SMU Strip Search Policy

Under the Fourth Amendment, inmates have a limited right of bodily privacy "subject to reasonable intrusions necessitated by the prison setting." *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016). This right, however, is very narrow. *Id.* at 326. Prison officials may conduct strip searches without probable cause provided that the search is conducted in a reasonable manner. *Bell v. Wolfish*, 441 U.S. 520,

99 S.Ct. 1861, 60 L.Ed.2d 447 (1970).  The reasonableness of a search "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."  *Id.* at 559, 99 S.Ct. at 1884.

When implementing strip search policies, correctional officers are afforded considerable deference, because "[t]he task of determining whether a policy is reasonably related to legitimate security interests is 'peculiarly within the province and professional expertise of corrections officials.'" *Florence v. Bd. of Chosen Freeholders of the Cty of Burlington*, 566 U.S. 318, 328, 132 S.Ct. 1510, 1517, 182 L.Ed. 566 (2012) (quoting *Bell v. Wolfish*, 441 US 520, 548, 99 S.Ct. 1861, 1879, 60 L.Ed.2d 447 (1979)).  Indeed, "courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Id.* at 322 - 23. A policy or "regulation impinging on an inmate's constitutional rights must be upheld if it is reasonably related to legitimate penological interests." *Id.* at 326 (internal quotation marks and citation omitted).

"Routine, suspicionless inmate search policies may sweep quite broadly and still be reasonable." *Parkell*, 833 F.3d at 329.  In *Millhouse v.* Arbasak, 373 F. App'x 135, 137 – 38 (3d Cir. 2010), the United States Court of Appeals for the Third Circuit stated that:

> Millhouse alleges that prison officials routinely subjected him to strip searches when entering and exiting his cell in the SHU and that, during one search, a guard "focused on his chest and penis while other employees were present."  The Supreme Court has held that prison officials may conduct visual body cavity searches in a

> reasonable manner...Assuming the truth of Millhouse's
> allegations, the searches, even if embarrassing and
> humiliating, do not violate the constitution.

*Id.* at 137 (citations omitted). *See also Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988) (upholding prison strip search policy calling for visual body cavity searches of inmate when he leaves or enters maximum security unit as well as when he travels under escort within the unit); *Goff v. Nix*, 803 F.2d 358, 370 - 71 (8th Cir. 1986) (permitting visual body cavity searches when leaving and entering the exercise area of a prison); *Campbell v. Miller*, 787 F.2d 217, 228 (7th Cir. 1986) (validating strip search of high security inmates when going to the law library).

An allegation that a strip search was degrading or embarrassing also fails to state a constitutional violation. *See Millhouse*, 373 F. App'x at 137 (body cavity strip "searches, even if embarrassing and humiliating, do not violate the constitution"); *Brown v. Blaine*, 185 F. App'x 166, 170 (3d Cir. 2006) ("[w]hile we recognize that Brown may have suffered embarrassment and humiliation while the search was being conducted, we cannot conclude that Brown's constitutional rights were violated by the search procedures employed."); *Williamson v. Garman*, Civ. No. 3:15-cv-1797, 2016 WL 3566967, at *5 (M.D. Pa. Jun. 29, 2016) ("Plaintiff's allegations that the search was degrading and embarrassing fails to state a constitutional violation").

Where a prisoner alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies. *See Jordan v. Cicchi*, 428 F. App'x 195, 199 – 200 (3d Cir. 2011) (explaining that an excessive force claim arising from

a strip search may proceed under either the Fourth Amendment or the Eighth Amendment, but the latter is "the primary source of protection after an individual's conviction"); *see also Robinson v. Ricci*, Civ. Action No. 08-2023, 2012 WL 1067909, at 17 n. 6 (D. NJ. Mar. 29, 2012) ("The Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner").

Here, Mr. Riley does not allege that the strip searches were anything other than routine searches when he left his SMU cell to go to other locations within the SMU used by other inmates and where he could possibly obtain contraband (i.e. the shower area, mini-law library, and exercise units). He does not claim he was singled out for strip searches, but rather that they were conducted in accordance with DOC policy concerning the administration and management of level 5 housing units. While Mr. Riley claims that the SMU strip search policy is unreasonable, he presents no factual allegations to support his claims. Nor do Plaintiff's allegations establish that the searches were unreasonably intrusive. He alleges no physical harm or force involved in the strip searches which he pleads took place in a cell or shower. Accordingly, Mr. Riley's claim that the SMU strip search policy violated his Fourth and/or Eighth Amendment rights will be dismissed pursuant to 42 U.S.C. § 1915(e)(2)(B).

## B.    Mr. Riley's RLUIPA Claim Is Moot

RLUIPA prohibits imposing a substantial burden on an inmate's religious exercise unless that burden furthers a compelling interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a). "[A] substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v Klem*, 497 F.3d 272, 280 (3d Cir. 2007). RLUIPA does not create a private right of action for damages against prison officials in their individual capacities, *Sharp v. Johnson*, 669 F.3d 144, 153 (2012), and claims for damages against them in their official capacities are barred by the sovereign immunity of the Commonwealth of Pennsylvania, *Sossamon v. Texas*, 563 U.S. 277, 293, 131 S.Ct. 1651, 1663, 179 L.Ed.2d 700 (2011).

Mr. Riley claims that the SCI-Camp Hill's SMU strip search policy, as applied to him – a Sunniyy Muslim, places a "substantial burden on his religious practices" because only his wife is permitted to view his nakedness. Presently Mr. Riley is not housed at SCI-Camp Hill's SMU; he is not even housed at SCI-Camp Hill. He is currently housed at SCI-Coal Township. Accordingly, Mr. Riley lacks standing to bring suit for prospective relief under RLUIPA.

### C.    Mr. Riley's Access-to-Courts Claim

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (per curiam). To state a cognizable access to courts claim, a plaintiff "must show (1) that [he] suffered an 'actual injury'—that [he] lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim" and (2) that he has no remedy "other than in the present denial of access suit." *Id.* (citing *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 2186 - 87, 153 L.Ed.2d 413 (2002)). It is not enough for an inmate to show some sort of denial of access without further elaboration. Plaintiff must demonstrate "actual injury" from the denial and/or delay of access. In addition, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* at 205–06 (citing *Harbury*, 536 U.S. at 416, 536 U.S. at 2187).

Mr. Riley claims that while housed in the SMU, Defendants knew he needed timely access to his legal materials because of an impending deadline to file an appeal in *Riley v. Grainey*, No. 3:12-cv-2470, 2015 WL 5693805 (M.D. Pa. Sept. 24, 2015). Plaintiff claims he had until October 24, 2015 to file his appeal. (ECF No. 1, p. 4.) He was placed in a cell with all of his "written materials" on October 26, 2015. (*Id.*, p. 14.) The inventory of his property was completed on November 2, 2015. (*Id.*) Yet, Mr. Riley claims he "lost his appeal rights" (*Id.*, p. 13) due to lack of timely access to his legal materials. Taking Plaintiff's allegations as true, they do not give rise to an access to courts claim as his allegations of harm are entirely speculative in

nature. An access to courts claim based "solely on the ground that the defendants confiscated [an inmate's] legal materials, contraband and non-contraband alike ...on its face, [is] insufficient to state a claim under *Harbury*." *Monroe*, 536 F.3d at 206. Here, Plaintiff fails to plead the lost chance to pursue a non-frivolous claim. In addition, he fails to demonstrate how the lack of access to his legal materials caused him to lose his appeal rights in *Riley v. Grainey*, No. 3:12-cv-2470 (M.D. Pa.). Taking judicial notice of the docket in Mr. Riley's previous case, there is no evidence that he undertook any effort to preserve his appellate rights by seeking an enlargement of time to file an appeal due to his lack of access to his legal materials. Likewise, there is no evidence that he submitted an appeal that was denied as untimely. Other than Mr. Riley's speculative assertion that defendants' action of denying him access to his legal materials until properly inventoried, he has not plead sufficient facts to allow the Court to ascertain that the appeal he sought to pursue was non-frivolous and that the "arguable" nature of the underlying claim was more than a mere hope, or that the Defendants action was the cause of Mr. Riley's actual injury. Accordingly, this claim will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### C.    Leave to Amend

"[I]f a complaint is vulnerable to [Rule] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). In this instance, Mr.

Riley cannot pursue a RLUIPA claim as a result of his transfer. However, he may be able to cure the identified deficiencies of his strip search claim and his access-to-courts claim. Thus, the Court will give him the opportunity to do so. Mr. Riley be granted twenty-one days to file an amended complaint as to these two claims. If Mr. Riley decides to file an amended complaint, he is advised he must clearly designate on the face of the document that it is the "Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped or legibly rewritten in its entirety, preferably on the court-approved form. In addition, Plaintiff is cautioned that in his amended complaint, he may not change the nature of this suit by adding new or unrelated claims from those set forth in his original Complaint. Also, the "amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). Mr. Riley is advised that any amended complaint he may file supersedes the original complaint and must be "retyped or reprinted so that it will be complete in itself including exhibits." M.D. Pa. LR 15.1; *see also W. Run Student Hous. Assocs. v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013). Consequently, all causes of action alleged in the original complaint which were not dismissed with prejudice and are not alleged in the amended complaint are waived.

Mr. Riley is also advised that his amended complaint must be concise and direct. See Fed. R. Civ. P. 8(d). Each allegation must be set forth in an individually numbered paragraph, in short, concise and simple statements. *Id.* Mr. Riley must

state what each named defendant did that led to the deprivation of his constitutional or other federal rights. *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948. Mr. Riley must also specify the relief he seeks with regard to each claim. Mr. Riley's failure to file an appropriate amended complaint within the required time will result in his lawsuit being dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. Mr. Riley is also cautioned that illegible submissions will be returned to him without consideration.

## VI. Conclusion

For the reasons set forth above, Mr. Riley's claims against all named defendants will be dismissed for failure to state a claim upon which relief may be granted. His RLUIPA claim is dismissed with prejudice. If Mr. Riley files an amended complaint it must be limited to his SMU strip search and access-to-court claims.

An appropriate order follows.

DATE: October 31, 2017

/s/ A. Richard Caputo
A. RICHARD CAPUTO
United States District Judge

- 14 -